DA 09-0181

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 337N

SAMUEL STOCKTON WHITE and TERESA WHITE,

      Plaintiffs and Appellants,

   v.

DONALD KEOWN and JUDY KEOWN,

      Defendants,Third-Party Plaintiffs and Appellees,

   v.

TIM FOX and ROCKY MOUNTAIN
RECREATIONAL COMMUNITIES, LLC,

      Third-Party Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV 07-223(A)
                    Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

      Karl Knuchel, Attorney at Law; Livingston, Montana

      For Appellees:

      Douglas J. Wold; Polson, Montana (for Tim Fox and Rocky Mountain
      Recreational Communities, LLC)

      Douglas Scotti; Morrison & Frampton, Whitefish, Montana (for Don and
      Judy Keown)

                            Submitted on Briefs:  September 10, 2009
                                 Decided:  October 14, 2009

Filed:

          _____
                         Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    The Whites appeal from the November 26, 2008 Findings of Fact, Conclusions of Law and Order and the March 25, 2009 Judgment entered by the District Court of the Eleventh Judicial District Court, Flathead County. We affirm in part and reverse in part.

¶3    The Keowns bought a lot in a subdivision near Bigfork, Montana, from Rocky Mountain Recreational Communities (RMRC) and commissioned a house design from an architect. Because of a plat error by RMRC the proposed house would not fit onto the lot. The Keowns and RMRC agreed to a boundary line shift to allow them to use a portion of the adjacent lot, which was still owned by RMRC. RMRC's agent Fox wrote the Keowns a letter memorializing the agreement and promising to record the boundary change. The Keowns commenced construction on the house shortly after receiving the letter, utilizing a portion of the adjacent lot. Fox and RMRC never did anything to change the boundary line to reflect the agreement and the Keowns never received any documentation of the boundary change other than the letter.

¶4     The Whites then bought the adjacent lot for $345,000 from RMRC as an investment, based upon a drive-by inspection and the original plat provided by RMRC. That plat did not reflect any boundary change or the encroachment by the Keown house. The Whites did not walk the lot, inspect the lot lines or locate any corner pins before purchasing it. The Keown construction was evident when the Whites bought their lot, but the fact of encroachment was not. The boundary adjustment agreed to between the Keowns and RMRC would have moved to the Keowns' lot a long narrow triangle of land with a base 20 feet wide and sides each about 290 feet long, covering a surface area of 2850 square feet. The physical encroachment of the Keowns' house onto the Whites' lot is less than three feet, in addition to a portion of the driveway and landscaping. The long narrow triangle has no independent value for development unless attached to one of the adjacent lots.

¶5     The Whites demanded removal of the encroachment and then sued the Keowns, seeking to quiet title to the triangle of land, and either removal of the encroachment or recovery of the fair market value of their lot. They also sought costs and attorney fees. The Keowns filed a third-party complaint against Fox and RMRC. At the bench trial the Whites presented no evidence of the value of the triangle of land and no evidence that the encroachment diminished the value of their lot. RMRC presented testimony that the encroachment did not diminish the value of the Whites' lot, and the Keowns presented testimony that removal of the encroachment would cost approximately $400,000.

¶6     The District Court found that the Keowns' home, landscaping and driveway encroached upon the Whites' lot, and that the encroachment resulted from RMRC's

3

failure to complete the boundary line adjustment. The District Court also held that while the Keowns' encroachment was unintentional, they "bear some measure of responsibility" for failing to confirm that the boundary adjustment had been recorded before beginning construction. The District Court found that the cost of requiring the Keowns to move the house "greatly outweighed" the burden of requiring the Whites to sell the narrow triangle of land to the Keowns.

¶7 The District Court determined therefore that granting complete equitable relief required quieting title to the triangle of property to the Keowns and an award of $27,103.50 damages to the Whites to be paid by RMRC. The damage award was based upon the number of square feet in the encroachment triangle and the price per square foot that the Whites paid for their lot. The District Court found that the Whites' claims for future damages were too speculative to support an award. The District Court ordered each party to bear its own costs and attorney fees. The Whites appeal.

¶8 On appeal we review all questions of fact or law in equity cases. *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 134, 804 P.2d 359, 364 (1990). The Whites contend that the relief ordered by the District Court was unfair, in violation of "equity's fundamental principle." The Whites do not contend that the District Court's findings of fact were in error, but that the result was inequitable and unfair.

¶9 Upon review of the record and the decision of the District Court, we find that the decision was fair and equitable. The unintentional Keown encroachment took a small sliver of the Whites' land and, according to the evidence, did not materially impact the value of the Whites' lot. The evidence showed that it would cost nearly $400,000 to

4

remove the Keowns' minimal encroachment, exceeding the purchase price of the Whites' lot. The Whites presented no evidence of the value of the narrow triangle of land, and the District Court's calculation of its value—based upon what the Whites had paid for the lot—was reasonable. The District Court's result was fair, equitable and supported by the facts.

¶10 The Whites contend that the District Court erred in not awarding them attorney fees they expended in pursuit of this case, and that they are equitably entitled to fees. There is no contract or statute that entitles the Whites to attorney fees. They contend that they were forced into the litigation and therefore are entitled to fees on an equitable basis. *Foy v. Anderson*, 176 Mont. 507, 580 P.2d 114 (1978). Each claim for an equitable award of attorney fees under *Foy* must be decided on its own facts. *Zier v. Lewis*, 2009 MT 266, ¶ 34, 352 Mont. 76, __ P.3d __.

¶11 The Whites contend that their recovery was only a few thousand dollars more than the amount they spent on attorney fees to prosecute the case. While the Whites did not make a substantial recovery, they presented little evidence that they were entitled to one. The opposing parties did not take frivolous or unsupportable positions, and we find no basis upon which to disturb the decision of the District Court that each party bear its own attorney fees.

¶12 Finally, the Whites contend that they are entitled to an award of costs. We agree. The District Court ordered that each party bear its own costs. Section 25-10-101, MCA, provides that a plaintiff is entitled to costs if he recovers a judgment in his favor for damages to real property. The Whites recovered a judgment against RMRC for damages

5

to their property and are therefore entitled under the statute to an award of costs against RMRC as a matter of law. We remand to the District Court for a determination of the Whites' allowable costs.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. The issues are clearly controlled by settled Montana law.

¶14 Affirmed in part and reversed in part.


/S/ MIKE McGRATH


We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE